19-2927 from the District of Minnesota, Azarax, v. William Syverson, et al. Very well, Mr. Ella, we'll hear from you first. Thank you, Your Honor, and may it please the Court, this is a professional malpractice case that concerns a transactional attorney, Mr. William Syverson, from about 2011-2014, and it's undisputed that Syverson formed, represented, learned, and even had personal ownership in a number of different business entities, corporations, and LLCs, all with the common purpose of developing and selling cell phone technology to Latin America and potentially around the world. He was the only American lawyer involved in numerous contracts, agreements, mergers, as I said, entity formation, fundraising, even potential initial public offering in the United Kingdom. The venture failed after Syverson secretly went to the customer, Nextel Mexico, and informed Nextel that Convey Mexico was his client, but he falsely stated that Convey Mexico could not deliver on the contract, and that Nextel should instead do business with a different entity that Syverson had secretly formed and had partial ownership in called Connecto. Azurex, as the legal successor to Convey Mexico, brought this action for a professional malpractice. The district court found that Azurex failed to show material evidence as to whether there was an attorney-client relationship between Syverson and Convey Mexico. This despite the fact that Syverson admits that he drafted a shareholder agreement for Convey Mexico, which is a Mexican corporation. This single, undisputed fact shows both an attorney-client relationship and professional negligence all at the same time. This shareholder agreement does not comply with Mexican law at all, and Mr. Syverson shouldn't have been drafting this shareholder agreement for a Mexican corporation. He did more than that. By the way, Minnesota law states that you can form an attorney-client relationship through providing advice or performing services, and here he performed a service for Convey Mexico. His argument is simply that he was doing it on behalf of one of the shareholders, not the corporation, but it's a corporate document. He also revised contracts between Convey Mexico and Nextel and warned Convey to never sign a contract without allowing him to review it. He maintained all transactional documents in a Dropbox that only he had access to. He then served as counsel and architect for an IPO that included Convey, which by that time had been merged into Azurex. In fact, Syverson had been counsel for virtually all of the alphabet soup of companies except Convey Mexico. He represented both a company that had partial ownership in Convey, which was WCD, and Convey Jersey, which Azurex or Convey Mexico had partial ownership in. In other words, he represented both sides of the sandwich but not the middle, according to him. It's undisputed that he never, in more than three years, he never told Convey that he was not its attorney. The district court also completely ignored and did not mention the testimony of a Mexican regulatory advisory attorney, Roberto Carballo, who testified that for almost three years, Syverson acted as Convey's attorney. Azurex also submitted a declaration. Hold on. On Carballo, what was his basis of knowledge? As I said, Mr. Syverson was the only U.S. attorney involved in all these transactions. I heard that, but you're talking about the district court ignoring testimony from Carballo, in which he said it was his belief or understanding that Syverson represented this entity. And I asked you, what was his basis of knowledge? He interacted with Syverson. He was in Mexico dealing with the Mexican regulations regarding telecommunications. He was dealing with the Mexican regulations, and Syverson handled virtually everything else. We had regular correspondence and phone calls about trying to get a contract with Mexico. Does that answer your question? You're saying it was based on correspondence that he had with Syverson, so I guess we would just look at the correspondence then to see whether it establishes the relationship, but it wouldn't really be that Carballo's testimony adds anything. If I understand your answer. Well, this testimony just puts further color on email communications, and that he understood that he had to run everything by Syverson. He understood that Syverson was in charge, and he understood that Syverson was Condon's attorney in the United States. My client also submitted a declaration from a former WCV director, Gary Donohue. Donohue stated that in August of 2014, he was at the Mexico City meeting with Nextel, and he observed and heard Syverson tell Nextel that he, Syverson, was the attorney for Condon, Mexico, but that Condon was not able to fulfill its obligations to Nextel. This admission alone is obviously enough to defeat assembly judgment, but because that was inconvenient to the district court, the court excluded this evidence on the basis that it had not been disclosed. Now, here's the heart of this case. Certainly a declaration cannot be disclosed before it is signed or exists. Syverson and the appellee's respondents declined to depose Donohue, even though he's identified in the complaint as the person who exposed the Mexico City double-cross, and he even provided documents described as the Donohue documents in the complaint, sort of like the Pentagon Papers. He was the star witness. He was disclosed in the Rule 26 disclosures. He's mentioned in the complaint 15 times. They could have taken his recognition. They chose not to. He was not a precise witness by any stretch of the imagination. To argue that his testimony was somehow a surprise, respondents pointed to a request for admissions, and the request, which is attached to our opening brief, is to request that neither Syverson nor Stinson entered into a written agreement with Azarax, saying it would serve as the attorney for Condé, Mexico. Azarax could have just admitted this. Instead, it admitted, it did admit the request, but it provided some additional information. And yet, according to the district court, it didn't provide enough information. I mean, this makes no sense. How do you get from admit that there wasn't a written contract to tell me what Jerry Donohue is going to testify about in terms of oral communications? The district court excluded a declaration of a known key witness who's mentioned over a dozen times in the complaint, even though respondents never asked any questions about Donohue. They didn't ask, do you have any admissions? They didn't ask, what does Mr. Donohue know? This is an abuse of discretion. Counsel, does that really matter if there's no standing? Well, we have two issues we need to prevail on. So if there's no standing, then I guess it wouldn't matter. Do you want me to address standing? Yes, if you could. So this court also dismissed this case because it found there was not even a disputed fact that Azarax was the successor of Condé, Mexico. So I'll run through it. And I don't see the clock. I don't know if that's... Five minutes and 43 seconds remain. Okay. So WCV, Severson's client, purchased 20%, agreed to purchase 20% of Condé, Mexico for $1 million. He did invest $1 million. And so there was an enforceable agreement to buy 20%. But what happened is it was never formalized or consummated under Mexican law. And then when all the parties decided to do this Condé, Jersey IPO, it didn't matter that it wasn't formalized because they were going to all merge their interests into one giant public corporation. To do that, they first combined all the Condé and another entity into a new entity called Azarax Holdings, Inc. And everyone knew that. If you look at Severson's deposition, he acknowledges that Azarax Holdings, Inc. existed. And WCV, who the other side claims had voting rights, never said anything or ever complained about it. In fact, they released all their claims against Azarax. And all of this is based on an agreement that Severson drafted. And you shouldn't benefit from his own professional negligence. It doesn't comply with Mexican law. And it wasn't signed by the majority shareholder, Arturo. Arturo denies that he signed it or had ever seen it. And that's a disputed fact, which the court completely ignored, other than saying that my client admitted in answers to interrogatories that WCV was a shareholder. And we're only admitting that it had the right to 20%, not that the voting shares were ever finalized. If I may, Your Honor, I'd like to keep the remainder of my time for rebuttal. You may. Thank you for your argument. Ms. Anthony, we'll hear from you. Thank you, Your Honor. May it please the court. Can you hear me all right? Yes, thank you. Okay. The district court correctly granted summary judgment on two discrete issues, standing and the attorney-client relationship. With respect to standing, the district court determined that Azarax was not the proper party in interest or had not presented sufficient evidence that it was the proper party in interest. Azarax's standing is the result of a variety of mergers between Convey Mexico and an entity called Azarax Holdings and then into the Azarax Inc. that is the plaintiff in this case. Convey Mexico was owned in part by WCV, another defendant in the underlying lawsuit. WCV invested $1 million in Convey Mexico, and in exchange it received 20% ownership. And what it was told was an enforceable shareholder agreement outlining its rights as a minority shareholder. That enforceable shareholder agreement required that any merger be subject to unanimous shareholder approval. There was no unanimous shareholder approval. And for that reason, the defendants challenged the plaintiff standing at the outset in an affirmative defense. What about the alleged dispute about whether the shareholder actually signed the agreement? I understand that Barbosa says he did not sign it. There's deposition testimony where he says he did not sign it. And the question is whether that creates a genuine dispute of fact about whether there was an agreement to the 100% requirement. What do you say to that? So two things, Your Honor. First of all, that testimony by Arturo Barbosa is directly at odds with an email sent by Nicolas Barrera, Barbosa's business partner and also the CEO of Convey Mexico. He sent the shareholder agreement to WCV and told WCV, here are the agreements signed by Arturo. Now, that is a party opponent admission that would be admissible at trial. Arturo testified there were no other Arturos that were part of Convey Mexico. He was the only one. Mr. Barbosa's testimony that he didn't sign the agreement came conveniently after plaintiff had alleged repeatedly that WCV was a shareholder, including a claim for breach of fiduciary duty on the basis that WCV was a shareholder. And after Azarax had extracted a settlement from WCV on that basis. So that testimony was not only at odds with testimony provided by a party opponent in this case, but it was at odds with every other representation that the plaintiff had made in the underlying case. The court considered that evidence and determined that it would be fundamentally incorrect and directly contradictory to all the other assertions made before the court and for that reason could not raise a genuine issue of material fact. Well, I just wonder whether it's, it's a credibility question. If you have the man who actually is purported to have signed it saying I didn't sign it. You may have some good arguments that he's not telling the truth, given what you just laid out, but does that mean we can say as a matter of law that he signed it? I don't know. And that's just an open question. You may have said what you want to say about it, but I give you that if you want to add anything. I appreciate that. I don't think it's a credibility question, Your Honor. I think it's a question of whether this is a genuine issue of material fact. And the reason that I say that is in order to be genuine, it has to be a fact that it would be reasonable for the jury to find in its favor. And here, because of the lopsided nature of the evidence, it would not be reasonable for a jury to find that Mr. Barbosa did not sign the agreement. And therefore, that creates, therefore, the shareholder agreement is not enforceable and there is standing. How would Barrera know if Barbosa signed it? That we don't know because Nicholas Barrera, the court sanctioned the plaintiff and wouldn't allow Nicholas Barrera to come to court and explain it. What we have is an email from Nicholas Barrera that says, here are the shareholder agreements signed by Arturo. That is the agreement on which WCV relied, assuming that it had its formal shareholdings and rights as a minority shareholder. I should mention that there are other documents in the record that support this notion that WCV had minority rights in Canvey, Mexico. In particular, Your Honor, there's the Dallas Agreement, which explained that WCV would be entitled to the same minority rights as Nicholas Barrera's company was entitled to in the Amrom Enterprise. Those minority rights include the right to approve or disapprove of a merger. So, Mr. Barbosa's testimony is just, frankly, not sufficient to raise a genuine issue of material fact under these circumstances. But I think it's important that we not miss the purpose here of a standing inquiry, which is the plaintiff always has an obligation to prove standing. The defendants don't have to disprove it. So, even if the plaintiff were to say before this court, well, there's a genuine issue on whether the shareholder agreement was enforceable, the plaintiff still has to demonstrate to this court that the Canvey, Mexico merger was valid and legitimate. And they have not presented a single document to suggest that this merger went through with the Mexican authorities, such that there is not a Mexican company still holding the right to this lawsuit. And that is the merger agreement itself doesn't do that. I mean, I understand giving it to be on Judge Collison's point. We have a merger agreement, which seems to be proof that the merger may have gone through. That is true, Your Honor. I think the problem here is that the plaintiff has now injected Mexican law and we can't ignore that. And under the Mexican law, in order for that merger to be legitimate, you would see filings with the Mexican authorities to show that that merger was legitimate. Even the plaintiff's expert in its late disclosed opinion notes that you would see filings with the notario publico if this merger had actually occurred. None of those documents exist. We haven't seen a single document to show that the merger was actually effective and went through, such that this asset is not still sitting in a Mexican company. But I think what you've done is identify the problem. We have now, because the district court cut off the plaintiffs from any consideration of Mexican law. And so we sort of have a chicken and egg problem. We have a shareholder agreement. We have a merger agreement. We don't know which one necessarily is effective. I know you have your theory, and that's fine. But you're saying that the plaintiff didn't prove it because there's no indication under Mexican law that the merger actually happened. I mean, what do we do with that? It seems like we just don't know at this point whether they're standing. And if we don't know at this point, Your Honor, then summary judgment is appropriate because we should know at this point. Why wasn't it of use of discretion for the district court to have cut off consideration of Mexican law? And the reason why I say that is because if you look at the advisory committee notes, it talks about it can be as late as trial when the foreign law can be introduced pursuant to a writing. And it seems to me if it can be introduced as late as trial, then certainly summary judgment is much earlier in the litigation. And the advisory committee notes do say that. But I think the operative question is whether the notice was reasonable under the circumstances of this case and whether it resulted in any sort of undue prejudice to the party who is not the noticing party. And here that happened. The Stinson defendants did not have an opportunity to review the law in its entirety, to analyze that law or name their own expert in response. And if the plaintiffs knew long ago that this Mexican law was going to be used to invalidate the shareholder agreement, they had an obligation to provide that notice at the most reasonably practicable time, not to wait and sit on that until summary judgment to spring it on the defendants so that the defendants would be deprived of any opportunity to depose their expert, to get an expert of their own or to evaluate the law in its entirety. I'm not sure I agree with you because I mean, yes, it was raised in the answer. The issue of standing was raised the pleading stage. But unless I'm mistaken, you can correct me if I'm wrong. The grounds for the standing objection were not raised until the motion for summary judgment. And I actually thought that the grounds were going to be that, you know, never the attorney. Stevenson was never the attorney for this particular group, not that there was a success or an interest problem. Was the first time the success or an interest issue brought up? Was it in the motion for summary judgment? Well, your honor, the standing was challenged at the outset and Azarax has always contended it was a success or an interest. So by the very nature of challenging the standing, you're challenging the success or an interest issue. There's a lot of different ways to challenge standing. You can challenge standing not only pursuant to what you just said, but in a variety of ways. And I'm just wondering, when is the first time the success or an interest issue came up? So the first time that I can see any challenge to the unanimous vote provision. So this idea that the shareholder agreement would provide for a unanimous vote is in February of 2018 at the deposition of Guy Rosbrook. And that is in the record at our appendix 027. Mr. Rosbrook was asked, was there was there a vote and was WCV part of that vote? And the answer was no, there was there was no vote and WCV was not a part of that vote. Now, what about the papers that were submitted to the district court? Was it the was it the motion for summary judgment or was it earlier than that? I believe it was the motion for summary judgment. There wasn't an opportunity to raise this issue until the facts had been fleshed out as to what was the shareholder agreement we were talking about. And was there a unit? Was there a vote? If that's the first time that specific issue is raised, why isn't it timely or reasonable under the circumstances to respond in the next written motion filed with the district court with foreign law? I'm just trying to flesh all this out time wise. I understand. It's not reasonable because the plaintiff is the party that bears the burden to prove standing. And so to the extent the plaintiff took a look at the Convey Mexico shareholder agreement and determined that it was going to was going to prove its standing as a successor and interest by invalidating that provision of the shareholder agreement. It needed to raise the Mexican law issue the moment it determined that it was going to use that Mexican law to invalidate that shareholder provision. I am certain that if the plaintiff did not learn about this issue, the moment it was raised, we all knew that WCV claimed WCV was a shareholder. We all knew there was a shareholder agreement and we knew there was no unanimous consent provision. If the plaintiff planned to prove its prudential standing as it's required to do in federal court, it needed to raise the Mexican law issue earlier. Do you think it's only a prudential standing issue, not an article three issue such that the court could just resolve, could bypass this and consider the merits? You just referred to prudential standing. That's why I asked. I think it's probably both. The party has to show it's the party suffering the injury or holds the right to the injury to pursue the redress in district court. I want to make sure I address the attorney-client relationship piece before my time runs out. If your honors have additional questions on standing, I'm happy to take those as well. With respect to the attorney-client relationship, counsel's correct. Counsel has no argument for a genuine issue of material fact on the existence of an attorney-client relationship if the declarations of these individuals are properly excluded. And they were. The district court did not abuse its discretion in excluding the five declarations that were provided at summary judgment. The information included in those declarations was requested, not only in the request to admit that counsel referenced, but in the contemporaneously served interrogatory, which sought all of the facts and circumstances underlying the plaintiff's qualified answer to that request to admit. Now, the plaintiff is correct. When a request to admit seeks an admission that there's no written agreement of attorney-client relationship, the plaintiff could have just said no. But the plaintiff made a strategic decision that it would qualify its answer to that question. And when it did so, it incurred the obligation of answering interrogatory in its entirety. Now, that interrogatory was subject to a motion to compel. And in that motion to compel, Stinson made it very clear to the plaintiff that what it was looking for were all the facts and circumstances underlying the verbal statements, overt acts, and emails that allegedly formed the basis of an attorney-client relationship. Plaintiff answered that interrogatory with a somewhat longer paragraph, but did not include any of the information that was then later disclosed in the declarations in response to summary judgment. And that is improper. The district court has discretion, not only to enforce the court rules on discovery abuses, but to enforce its own scheduling order. And frankly, the decision to do so is unremarkable. The district court explained that it had to redouble its efforts and review the entire discovery record in this case to determine that the plaintiffs had, in fact, not complied with its discovery obligations. Making that decision under those circumstances and with those facts, the district court did not abuse its discretion in excluding those declarations. Your Honor, Judge Colleton pointed out an interesting point about Roberto Carvalho. You are correct, Your Honor. He does not have any personal knowledge about Bill Severson's interactions with Convay Mexico. There are no documents in the record that support the notion that Bill Severson and Convay Mexico had mutual assent vis-a-vis an implied relationship for attorney-client services. There's no evidence that there was either a request for legal services or legal services provided. The Roberto Carvalho communications actually were not related to Convay Mexico. They were related to two different entities, Nextel and Nucor. Nucor was Bill Severson's client, and he was communicating with Roberto Carvalho on those facts. And the records are very clear, both the depositions and the documents. My time is up. This court should affirm the district court's decision on summary judgment. Thank you. Very well. Thank you for your argument. Mr. Alla, we'll hear from you in rebuttal. How much time do I have? Three minutes and 43 seconds. I want to talk about standing, Your Honor. This was a complete surprise to us on summary judgment. They were arguing about this, you know, unanimous vote argument because everyone knew about the existence of Azarax Holdings. Everyone, including WCV, no one ever complained that their rights weren't followed, that they didn't get a chance to vote. And, you know, Severson and Stinson are not WCV. They almost lacked standing to make the standing argument. WCV knew everything that was going on. It was going to be a giant IPO. And they weighed any right to say they didn't get a chance to vote. Everyone knew that they had a 20% interest and that it would be combined into the IPO and that Azarax Holdings was a vehicle to do that. And it was so open that we never thought that they would make this argument until it was made on summary judgment. And I just want to say. I thought there was no dispute that there was a lack of unanimity. And that's why we're fighting about whether the shareholder agreement was signed and why you want to get into Mexican law. Why do you say it never occurred to you that there might not have been unanimity? Before summary judgment, no one ever complained that WCV didn't have a chance to vote on the merger. WCV was aware of the merger. They never made any complaints. They didn't get a chance to vote. They were aware. And so we didn't see where they were coming from until the summary judgment motion. And then we listed three reasons why it fails. And we only need one reason to succeed on our standing argument. One, Arturo consistently said he'd never seen that document. It wasn't signed on it. It wasn't cc'd on the email from Mr. Barrera. And he would never have signed his name Arturo Nataran because that's not his last name. That's not how they do it in Latin America. Plus, that agreement that someone forged a signature on reduces his shareholdings down to one share, which he never would have agreed on. Plus, he would have never signed an English document. Plus, it was sent by Nick Barrera, who's been barred from providing evidence in this case. In fact, he was, in their own answer, they accused him of fraud. And the stock holdings were shifted to Barrera's favor. So I think there's a lot of circumstantial evidence that this was a fraud. Second, WCV waived any argument about that. And third, it's flat-out inconsistent with Mexican law. And the district court could have simply allowed more time for the parties to brief Mexican law instead of cutting this off because it was inconvenient and dismissing it. So we would ask the Court of Appeals to reverse and remand because it was an abusive discussion to exclude evidence. And by the way, Your Honor, I did not say that there wasn't an issue of disputed fact. Even if the declarations are excluded, I think there's still plenty of evidence, in fact, including the fact that Mr. Severson drafted a shareholder agreement for Honda Mexico. That's a service for a client who never disavowed a disclaim between client relationship. Counsel, should you have predicted once they put in the answer that standing was going to be challenged? At that point, did you have an obligation then to marshal all the facts in favor of standing? I'm trying to work through the Rule 44 issue here. They raised standing as an affirmative defense. We provided the merger agreement. As Your Honor pointed out, it's in the record. And beyond that, how were we supposed to know what aspect of the corporate history they were challenging? When, again, at the time, either WCB or Severson or anyone expressed any concern whatsoever about the existence of Azrax Holdings, Inc., which is on multiple agreements signed by all parties, including Severson, including WCB, the heads of terms, the heads of agreement. And so the corporation existed. And we're limited by the record, but I think it's clear that everyone knew how the structure was going to operate. In fact, Mr. Severson was the architect of this whole complicated mess. And the lawyer who drafted the shared agreement that they rest their whole defense on. When you say it's clear in Mexican law that—I think what you said is it's clear in Mexican law that a unanimity provision would not be valid. Is that what you said? Yes, Your Honor. Is that discussed in your submission in the district court? Yes. There's an expert report that was excluded by an attorney who's submitted the practice in both countries. And then you can look at the draft. The professor from Rice. Correct. All right. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted, and the court will file an opinion in due course.